**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 30, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

YOLANDA C. FLORES,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant-Appellee.

No. 07-2280
(D.C. No. 1:06-CV-00869-DJS)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**TYMKOVICH**, Circuit Judge.

Yolanda Flores appeals from a judgment of the district court affirming the

Commissioner's denial of her application for Social Security disability insurance

benefits and supplemental security income (SSI) payments. Exercising

jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Ms. Flores was born in 1954. She completed the tenth grade and has tried without success to obtain a GED. She has worked as a crew leader at a laundry facility, as a head maid in a motel, as a seamstress, and in hotel food service. She claims she left the job at the laundry because she was unable to use a computer, and she left her maid position because she could not inventory supplies due to her inability to read or write. In her benefits application, she claimed disability based on depression, panic disorder, and anxiety, with an alleged onset date of July 15, 2002. After her application was denied initially and upon reconsideration, she received a hearing before an administrative law judge (ALJ), who issued a written decision.

At steps two and three of the five-step sequential evaluation process used to determine whether a claimant is disabled, *see Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (describing the process), the ALJ found that Ms. Flores has several impairments—major depression, panic attacks, and borderline intellectual functioning—that, in combination, are severe within the meaning of 20 C.F.R. §§ 404.1523 and 416.923, but that do not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Of particular relevance is the ALJ's finding that Ms. Flores's impairments did not meet or medically equal Listing 12.05C, which describes one of several ways a claimant may establish the listed impairment of "*Mental retardation*."

-2-

At step four of the analysis, the ALJ determined that Ms. Flores retains the residual functional capacity (RFC) for light work and could return to her past work as a hotel maid and laundry crew leader as those jobs are performed in the national economy. Accordingly, the ALJ concluded that she was not entitled to a period of disability or eligible for SSI. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. The district court affirmed, and Ms. Flores appeals.

## DISCUSSION

Ms. Flores raises two issues on appeal: (1) the ALJ's step-three finding that she did not meet Listing 12.05C is legally flawed and not supported by substantial evidence; and (2) the ALJ's RFC finding failed to take into account her nonexertional impairments. Our review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. *Lax*, 489 F.3d at 1084. We disagree with Ms. Flores on both points.

### A. The ALJ's Step-Three Finding

Under Listing 12.05's so-called "capsule definition," "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."

20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05.[1]  In order to meet Listing 12.05C, a claimant must establish "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]"  *Id.* § 12.05C.  When, as here, "more than one IQ is customarily derived from [a] test[,] . . . the lowest of these [is used] in conjunction with 12.05."  *Id.* § 12.00D.6.c.

In June 2004, Cherylee Tombaugh, a certified educational diagnostician, evaluated Ms. Flores at the request of the New Mexico Department of Vocational Rehabilitation.  The evaluation included administration of the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III), on which Ms. Flores received a verbal IQ score of 61, a performance IQ score of 67, and a full scale IQ score of 60.  Ms. Tombaugh observed that Ms. Flores had not acquired any reading, writing, or math skills, and that she exhibited evidence of a mental deficiency.  But "from the daily living skills [Ms. Flores] can perform," Ms. Tombaugh stated that a diagnosis of mental retardation could not be "accurately defined."[2]  Aplt.

---

[1]      The parties debate whether Ms. Flores meets the capsule definition of § 12.05.  However, the ALJ did not even discuss the capsule definition let alone base her step-three finding on it.  In any event, because we conclude that the ALJ properly rejected the IQ score as invalid, which in itself is a sufficient basis for the ALJ's finding that Ms. Flores does not meet Listing 12.05C, *see Lax*, 489 F.3d at 1089, we do not address the parties' arguments about the capsule definition.

[2]      In her report, Ms. Tombaugh referred to the following definition of mental retardation, which differs from Listing 12.05C:  "having below 70 IQ and significant adaptive impairment in at least two of the following areas:

(continued...)

App. at 277.[3]  Ms. Tombaugh further explained that Ms. Flores "should be able to successfully work in an area where she is shown how to perform a task, and is carefully supervised," and that she "should be able to work in housekeeping in a motel/hotel business, [as] a cleaning person in a cleaning business or as a cook in a restaurant or any other job that will not require her to read, write or compute math." *Id.*

Based in part on Ms. Tombaugh's report, the ALJ concluded that Ms. Flores did not meet Listing 12.05C.  The ALJ acknowledged that the WAIS-III IQ "scores are considered low," *id.* at 18, and then discussed Ms. Tombaugh's additional statements, noted above, concerning Ms. Flores's capacity to perform certain types of work.  The ALJ also discussed the fact that Ms. Flores has a valid driver's license, drives three times per week, and is able to care for her personal needs and perform housework.  The ALJ then concluded that because "the record does not support [a finding that] the claimant has a physical

---

[2](...continued)
communication, self-care, home-living, social/interpersonal skills, use of community re[s]ources, self-direction, functional academic skills, work, leisure and health and safety."  Aplt. App. at 277.

[3]    Ms. Flores filed an appendix that contains two different sets of page numbers.  Our citations are to the original pagination of the certified administrative record.  We strongly urge litigants to structure their appendices in agency cases in a manner that preserves the original pagination, and to cite to the original pagination in their briefs.

or mental impairment imposing additional and significant work-related limitation of functioning[,] the criteria of [Listing 12.05C] is [sic] not met or equaled." *Id.*[4]

Ms. Flores first takes issue with the ALJ's rejection of the IQ score as invalid. She argues that the ALJ based her view of the validity of the IQ score on personal observation and speculation, and that because Ms. Tombaugh did not explicitly question the score's validity, the ALJ was not at liberty to find it invalid. We disagree. It is within the province of an ALJ to make factual determinations regarding the validity of an IQ score, that is, whether the IQ score is "an accurate reflection of [a claimant's] intellectual capabilities." *Lax*, 489 F.3d at 1087. In doing so, an ALJ may "consider other evidence in the record." *Id.* That is what the ALJ did in this case.

Foremost, the ALJ looked to the narrative statements in Ms. Tombaugh's report. It was proper for the ALJ to rely on these statements because "the results of intelligence tests are only part of the overall assessment, [and] the narrative

---

[4]     The district court concluded that, because Ms. Flores has impairments considered severe at step two, the ALJ erred in finding that she does not have a physical or mental impairment that imposes any "additional significant work-related limitation of functioning" required by Listing 12.05C. *See Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (explaining that whether a limitation is "'significant'" for purposes of Listing 12.05C should "'closely parallel' the step two standard"). However, because Listing 12.05C also requires a valid IQ score of 70 or lower, the court considered this error to be harmless in view of its conclusion that the ALJ properly rejected the validity of the IQ score. *See Lax*, 489 F.3d at 1089. Because we also conclude that the ALJ properly rejected the IQ score as invalid, we agree that any error the ALJ may have made with respect to the other element of Listing 12.05C, a matter on which we express no opinion, was harmless.

report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00D.6.a. Ms. Tombaugh's narrative statements made clear her opinion that Ms. Flores's IQ score was neither consistent with her "developmental history and degree of functional limitation," *id.*, nor an "accurate reflection of [her] intellectual capabilities," *Lax*, 489 F.3d at 1086. Ms. Tombaugh opined that despite the low IQ score, Ms. Flores could not be diagnosed as mentally retarded (albeit under a slightly different definition of that term than Listing 12.05C), and that Ms. Flores would be able to perform certain types of work if closely supervised.

Besides the specific step-three discussion, the ALJ pointed to other evidence in the record in connection with her RFC finding at step four that supports her rejection of the validity of the IQ scores. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) (holding that findings at other steps of the sequential evaluation process may provide a proper basis for upholding an ALJ's step-three finding). First, the ALJ discussed records of treatment Ms. Flores received for depression at Southwest Counseling Center from 1998 to 1999 and again in 2004, which showed that Ms. Flores had mild symptoms that

improved; a Global Assessment of Functioning (GAF) rating of 60 in 2004;[5] and a pattern of missed appointments that resulted in termination of services.

The ALJ next discussed the results of a consultative psychological examination performed by James Schutte, Ph.D., in February 2004. Dr. Schutte noted that Spanish was Ms. Flores's first language but her ability to communicate in English was adequate; her attention and concentration were within normal limits; and she showed no gross deficits of memory. Dr. Schutte's report indicated some mild limitations in Ms. Flores's abilities to understand and remember very short or simple instructions; to attend and concentrate; to interact with the public, coworkers, and supervisors; to adapt to changes in the workplace; and to be aware of normal hazards and react appropriately. Dr. Schutte found moderate limitations in her ability to understand and remember detailed or complex instructions; to carry out instructions; to work without supervision; and to use public transportation or travel to unfamiliar places. The ALJ viewed Dr. Schutte's report as consistent with a finding that Ms. Flores retained the ability to follow simple oral instructions and perform simple tasks, a view we share.

---

[5]     A GAF rating of 60 is at the upper end of the range of scores, 51-60, and indicative of moderate symptoms or functional difficulties in an individual's overall level of functioning. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000).

In further support of the RFC finding, the ALJ discussed the results of a Psychiatric Review Technique that Dr. Scott Walker, a nonexamining medical consultant, prepared in February 2004. Dr. Walker found no limitations in daily activities; mild limitations in social functioning; moderate limitations in concentration, persistence and pace; and no evidence of any episodes of deterioration. The ALJ also referenced Ms. Flores's testimony that she is disabled because she cannot read English, which the ALJ viewed as contrary to Ms. Tombaugh's opinion that Ms. Flores could perform certain jobs that did not require reading, writing, or math skills. The ALJ considered Ms. Tombaugh's opinion on this point to be essentially consistent with Dr. Schutte's opinion, a proposition with which we also agree.

In sum, we conclude that the ALJ gave legally sufficient reasons for rejecting the IQ score as invalid. We further conclude that substantial evidence supports the ALJ's finding that Ms. Flores did not meet or medically equal Listing 12.05C.

**B. The ALJ's RFC Finding**

Turning to Ms. Flores's second issue, we conclude that the ALJ did not fail to consider the effect that Ms. Flores's nonexertional limitations would have on her RFC. First, the ALJ stated that "[t]he evidence of record establishes the existence of non-exertional limitations associated with affective and

anxiety-related disorders and borderline intellectual functioning." Aplt. App. at 19.

As for Ms. Flores's more specific contention that the ALJ failed to express her nonexertional impairments "in terms of work-related functions," as required by Social Security Ruling 96-8p, 1996 WL 374184, at *6 (1996) (SSR 96-8p), we disagree. "Work-related mental activities . . . include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* As evident from our discussion in the preceding subsection, the reports of Ms. Tombaugh, Dr. Schutte, and Dr. Walker, as well as the records from the Southwest Counseling Center, describe limitations on Ms. Flores's ability to perform the types of "work-related functions" set out in SSR 96-8p. The ALJ relied on those reports and records in determining that Ms. Flores's mild or moderate nonexertional impairments would not impose any "significant functional limitations" in the workplace. Aplt. App. at 19. Thus, we conclude that when formulating Ms. Flores's RFC, the ALJ fulfilled her obligation to express Ms. Flores's nonexertional capacity "in terms of work-related functions," SSR 96-8p, at *6.

## CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge